277 So.2d 126 (1973)
STATE of Louisiana
v.
Raymond PRIEUR.
No. 52365.
Supreme Court of Louisiana.
February 19, 1973.
Rehearing Denied March 26, 1973.
Dissenting Opinion March 29, 1973.
*127 Orleans Indigent Defender Program, Anthony R. Messina, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Harry H. Howard, Asst. Atty. Gen., Jim Garrison, Dist. Atty., Louise Korns, Asst. Dist. Atty., for plaintiff-appellee.
BARHAM, Justice.
Raymond Prieur was charged with the armed robbery of Morris Johnson on the night of June 23, 1970, under a factual allegation that Prieur while armed with a pistol took $44.00 from Johnson, who was driving a New Orleans Public Service bus along his usual route. Prieur was arrested about a week later in connection with the armed robbery of Leroy Quarles at a service station. Prieur was tried and found guilty of the armed robbery of Morris Johnson, the bus driver, and sentenced to 25 years. From the conviction and sentence he has filed this appeal, relying on 21 bills of exceptions.[1]
Bills of Exceptions Nos. 13, 14, 15, 17, 18, 19 and 20 pertain to testimony given and evidence introduced concerning the armed robbery of Leroy Quarles for which the defendant was arrested on July 1, 1970, eight days after the commission of the offense in this case.
Defendant reserved Bill of Exceptions No. 16 when a witness, Clayton Johnson, testified about a third armed robbery. Like the victim in this case, Clayton Johnson was driving a New Orleans Public Service bus when on June 5, over two weeks before this offense, that armed robbery occurred.
The per curiams of the trial judge to these bills of exceptions state that the testimony and evidence were permitted under R.S. 15:445 and 446 to show knowledge, intent, and system. These statutes provide:
"§ 445. Inference of intent; evidence of acts similar to that charged.
In order to show intent, evidence is admissible of similar acts, independent of the act charged as a crime in the indictment, for though intent is a question of fact, it need not be proven as a fact, it may be inferred from the circumstances of the transaction.
"§ 446. Evidence where knowledge or intent is material and where offense is one of system.
When knowledge or intent forms an essential part of the inquiry, testimony may be offered of such acts, conduct or declarations of the accused as tend to establish such knowledge or intent and where the offense is one of a system, evidence is admissible to prove the continuity of the offense, and the commission of similar offenses for the purpose of showing guilty knowledge and intent, but not to prove the offense charged."
*128 This Court has become divided in its interpretation and application of the above provisions. See State v. Crook, 253 La. 961, 221 So.2d 473 (1969), with Justice Barham dissenting; State v. Bolden, 257 La. 60, 241 So.2d 490 (1970), with Justices Barham and Tate dissenting; and State v. Hills, 259 La. 436, 250 So.2d 394 (1971), with Justices Barham, Tate, and Dixon dissenting. Clearly, introduction of the testimony as to the service station robbery is unwarranted by the statutes cited, and further, sound notions of fundamental fairness embodied in our State's constitution necessitate its exclusion. The statutes cited were adopted in 1928 as part of the old Code of Criminal Procedure and reflect a conscious desire on the part of the draftsmen to adopt a limited, rather than expansive, approach to the admissibility of other acts of misconduct.
The admissibility of other acts of misconduct involves substantial risk of grave prejudice to a defendant. As to the prejudicial effect of evidence of other crimes, Wigmore says:
"* * * The natural and inevitable tendency of the tribunalwhether judge or juryis to give excessive weight to the vicious record of crime thus exhibited, and either to allow it to bear too strongly on the present charge, or to take the proof of it as justifying a condemnation irrespective of guilt of the present charge. * * *" 1 Wigmore, Evidence § 194 (3rd Ed.).
The probative value of evidence of unrelated offenses in relation to the charged offense should therefore be weighed in light of its possible prejudicial effect, its tendency to influence the triers of fact improperly as to the present guilt of the accused. See McCormick on Evidence, § 190 (Cleary Ed. 1972). If evidence of other crimes were freely admissible, a defendant would often be forced to defend against charges of which he had no notice and for which he is unprepared.
Evidence of crimes related to the offense with which a defendant is charged is inadmissible except under special exceptions. For an excellent discussion of the problem, see McCormick on Evidence, § 190 (Cleary Ed. 1972). Aside from related offenses admissible as part of the res gestae, and convictions admissible for impeachment purposes, Louisiana's statutes provide for only three exceptionsacts relevant to show intent, knowledge or system.
Can it fairly be said that the robbery of the bus driver charged in the instant case and the robbery of the service station were part of a system within the meaning of the statutory exception embodied in R.S. 15:445-446? We explained in State v. Spencer, 257 La. 672, 243 So.2d 793 (1971), that crime of system are those acts and offenses which are of a like nature and exhibit like methods or plans of operation. Spencer was a prosecution for armed robbery, and we held that evidence as to another armed robbery was admissible, for there the other armed robbery followed the same modus operandi as the armed robbery charged and was related in time and location. See also State v. Montegut, 257 La. 665, 243 So.2d 791 (1971), and State v. Smith, 259 La. 515, 250 So.2d 724 (1971).
Clearly the robbery of the service station was not part of any common system. The only similarity between the robbery at the service station and the bus driver robbery charged in this case is that both were robberies with a pistol. The robbery at the service station occurred in the early morning hours. Two people drove up in a stationwagon, and one identified as this defendant got out of the vehicle, held a pistol (identified as resembling a .45) on the victim, and stated that this was it, he wanted all of the money. The robbery for which the defendant was charged in the instant case occurred in the evening around 9:00 when one person boarded a bus occupied *129 by only the driver. The robber made a threat with a pistol (which the victim testified resembled a .38) and took some money from the driver. The victim in the present case could not definitely describe the clothing worn by the robber, nor was he certain that the pistol shown to him at the trial was the one used in the robbery. A comparison of the testimony of the victims in the two robberies lends no support to a theory that there was any similarity between the two offenses.
Since, as seen above, the robbery of the service station was not part of any system, can it properly be said that evidence as to it was admissible under the other two exceptions noted in R.S. 15:445 and 446 knowledge and intent? The ambit of these exceptions is helpfully elaborated in McCormick on Evidence as follows:
"To show, by similar act or incidents, that the act on trial was not inadvertent, accidental, unintentional, or without guilty knowledge.
To show, by immediate inference, malice, deliberation, ill will or the specific intent required for a particular crime." McCormick on Evidence, § 190, pp. 450-451 (Cleary Ed. 1972).
Under the facts developed by the State it was quite clear that whoever held up the bus driver, Morris Johnson, knew what he was doing and intended what he was doing; there was no question of the robber's acts being "inadvertent, accidental, unintentional or without guilty knowledge." Thus, evidence of the service station robbery was in no sense fairly admissible by the State in its case in chief to show "knowledge" or "intent".[2] Nor was it properly admissible under any other exception to the "other crime" exclusionary rule.
In this case it is apparent that the evidence of the service station robbery was offered to show that the defendant had a bad character, not to establish system, guilty knowledge, or intent. But a defendant's character is not properly at issue unless he chooses to put it at issue. See R.S. 15:481. The State's case against the defendant was weak, but it was not to be bolstered by the State's improper attack upon defendant's character. The record of the entire trial of this case consists of about fifty pages. The State's only evidence of the actual offense is taken from one witness, the bus driver who was robbed, and it consists of five pages of direct examination and one-half page of redirect. Two officers laid the predicate for the identification procedure, and four officers testified about the arrest of defendant following the service station robbery and the identification of his clothing and gun found at the scene of the arrest. Much of the evidence elicited from the officers who gave chase to the defendant and arrested him concerns the armed robbery at the service station. The remaining evidence concerns a third offense.
For the foregoing reasons, the admission of evidence as to the service station robbery was reversible error.
Because of the importance of the subject matter and because the defendant may again be tried for the instant crime, we feel it appropriate to state our view with respect to the admissibility of evidence as to the third offense, the robbery eighteen days previously of another bus driver. Since the other robbery was at the same hour, at the same corner, and also of a bus driver, it may well have been part of a common system within the meaning of R.S. 15:445 and 446. Thus we feel that if the State is able to show by clear and convincing evidence that the defendant committed such other crime, such evidence may well be properly admissible. The admissibility of evidence as to such other crimes, *130 however, involves certain problems which we feel now should be confronted and to the extent possible, overcome. The spirit of our constitutional provisions, we believe, requires the establishment of safeguards prerequisite to the admissibility of such evidence.
Our Constitution specifically requires that the defendant be given notice of the offense for which he will stand trial so that he can know the nature and cause of the accusation in order to prepare his defense. Art. I, Sec. 10. It permits him full confrontation and cross-examination, which require prior knowledge of the offense and the circumstances so that he may adequately exercise these constitutional rights. Art. I, Sec. 9. It requires due process and trial for the offense before an impartial jury. Art. I, Secs. 2, 9.
Some members of our Court have long been concerned with whether and to what extent the evidentiary exceptions provided in R.S. 15:445 and 446 meshed into and were cohesive with our constitutional scheme. We have zealously placed safeguards around the introduction of evidence of other convictions offered for the purpose of impeaching the credibility of a defendant. But thus far we have provided no safeguards as to the introduction of evidence of other offenses to establish knowledge, intent, system. We believe this Court has gone as far as possible, if not too far, in approving admission of evidence of stale, unrelated offenses without prior notice and other appropriate safeguards. Because of these serious misgivings, we feel that the following safeguards should now be set forth, to be applicable to the retrial of this case and to all criminal cases tried after the date of the finality of judgment in this case. See in this connection State v. Spreigl, 272 Minn. 488, 139 N.W. 2d 167 (1965) and State v. Billstrom, 276 Minn. 174, 149 N.W.2d 281 (1967).
When the State intends to offer evidence of other criminal offenses under the exceptions outlined in R.S. 15:445 and 446:
(1) The State shall within a reasonable time before trial furnish in writing to the defendant a statement of the acts or offenses it intends to offer, describing same with the general particularity required of an indictment or information. No such notice is required as to evidence of offenses which are a part of the res gestae, or convictions used to impeach defendant's testimony.
(2) In the written statement the State shall specify the exception to the general exclusionary rule upon which it relies for the admissibility of the evidence of other acts or offenses.
(3) Prerequisite to the admissibility of the evidence is a showing by the State that the evidence of other crimes is not merely repetitive and cumulative, is not a subterfuge for depicting the defendant's bad character or his propensity for bad behavior, and that it serves the actual purpose for which it is offered.
(4) When the evidence is admitted before the jury, the court, if requested by defense counsel, shall charge the jury as to the limited purpose for which the evidence is received and is to be considered.
(5) Moreover, the final charge to the jury shall contain a charge of the limited purpose for which the evidence was received, and the court shall at this time advise the jury that the defendant cannot be convicted for any charge other than the one named in the indictment or one responsive thereto.
The conviction and sentence are set aside, and the case is remanded to the trial court.
HAMLIN, C. J., and SANDERS and SUMMERS, JJ., dissent.
SUMMERS, Justice (dissenting).
Despite urgent appeals by the district attorneys of the State, a rehearing has been *131 refused in this revolutionary four-to-three decision. In my view the decision is erroneous and should not stand.
Prieur was convicted of armed robbery committed on June 23, 1970 while armed with what was described by the victim, Morris Johnson, as a 45-caliber revolver. For the purpose of showing knowledge, intent and system on the part of Prieur, the State offered evidence of the armed robbery of Clay Johnson by Prieur on June 5, 1970, and the armed robbery of Leroy Quarles by Prieur on July 1, 1970.
On June 5, 1970 at approximately 9 p. m. Clay Johnson, a bus driver, was on duty when his empty bus was boarded at Louisiana and Tchoupitoulas Streets by an armed assailant, who held a 45-caliber gun on him, took his money changer and departed. He positively identified Prieur as the robber.
Morris Johnson, the victim of the crime charged, was also a bus driver. While driving on his Louisiana Avenue route near Tchoupitoulas Street at approximately nine o'clock at night on June 23, 1970, Prieur entered the bus, pointed a revolver at Johnson and took his money changer. No one else was in the bus at the time. Johnson was not familiar with guns and believed the gun pointed at him to be a 38-caliber revolver. However, at the trial, he recognized Prieur's 45-caliber revolver as the type gun used. Prieur wore green trousers. Later, Johnson identified Prieur at a line-up.
Leroy Quarles was robbed on July 1, 1970 at 2 a. m. at a service station at 3400 South Claiborne near Louisiana Avenue. The robbery occurred in the early morning hours while Quarles was alone. His assailant used a 45-caliber handgun and wore green trousers. Prieur was arrested that night hiding under a house some distance away. The 45-caliber revolver was found nearby. Quarles identified Prieur as the robber.
Prieur presented one alibi witness who was thoroughly discredited. There was no other evidence for the defense. The evidence that Prieur committed the offense charged and the evidence of the two offenses used to prove intent was unrebutted.
In addition to the explicit statutory authorization for admission of evidence of other offenses to prove intent, it should be noted that the district attorney made full disclosure in his opening statement of the facts he intended to prove in connection with the other offenses, declaring the purpose for which the evidence would be used. La.Code Crim.Proc. art. 765; State v. Kreller, 255 La. 982, 233 So.2d 906 (1970). The trial judge also instructed the jury as to the limited effect to be given to the evidence of similar acts by instructing them on the law applicable to proof of guilty knowledge, intent and system by other offenses. The verdict of the jury was rendered after deliberating sixteen minutes.
This conviction has been set aside because the court holds that the robbery of the service station attendant on July 1, 1970 was not similar to the offense charged involving robbery of the bus driver on June 23, 1970.
Evidence of other similar offenses to prove intent is specifically authorized by statute:
In order to show intent, evidence is admissible of similar acts, independent of the act charged as a crime in the indictment, for though intent is a question of fact, it need not be proven as a fact, it may be inferred from the circumstances of the transaction. (La.R.S. 15:445)
When knowledge or intent forms an essential part of the inquiry, testimony may be offered of such acts, conduct or declarations of the accused as tend to establish such knowledge or intent and where the offense is one of a system, evidence is admissible to prove the continuity of the offense, and the commission of similar offenses for the purpose of showing guilty knowledge and intent.

*132 but not to prove the offense charged. (La.R.S. 15:446).
In my view the holding of the majority is erroneous. It is not necessary that the offense or act offered to show intent be identical to, or a duplicate of, the one charged to be competent for the purpose of showing the accused's intent. An accused is entitled to a fair trial, not a perfect one. United States v. Weiler, 385 F.2d 63 (3rd Cir. 1967); Weiss v. United States, 122 F.2d 675 (5th Cir. 1941), cert. denied, 314 U.S. 687, 62 S.Ct. 300, 86 L.Ed. 550, rehearing denied 314 U.S. 716, 62 S.Ct. 478, 86 L.Ed. 570; People v. Fowler, 119 C.A.2d 657, 260 P.2d 89 (Cal.App.1953); State v. Kirby, 185 Neb. 240, 175 N.W.2d 87 (1970). It is sufficient if the offenses are of the same nature. State v. Childers, 196 La. 554, 199 So. 640 (1941); State v. Cupit, 189 La. 509, 179 So. 837 (1938). Nor can an exact limitation of time be fixed as to when another offense is remote. The decision on that question must depend upon the circumstances of the particular case. State v. Cupit, ibid. See also State v. Montegut, 257 La. 665, 243 So.2d 791 (1971); State v. Spencer, 257 La. 672, 243 So.2d 793 (1971). And the weight and creditability of the evidence of other offenses is a matter for the jury. The judge is only concerned with the relevancy of the evidence.
Wigmore in discussing the different ways in which courts have interpreted the term "similar acts" observed that the common sense test admits "such instances as bear a similarity liberally interpreted by the standard of every-day reasoning." A rigid insistence that similar acts must bear on all fours with the offense in issue disregards "the consideration that justice consists quite as much in protecting the public against evildoers as in showing mercy to those whose guilt has been more or less skillfully concealed." 2 Wigmore on Evidence § 302 (3rd ed.1940).
Unimportant factual variations between the crime charged and the robbery at the service station are not sufficient to exclude evidence of the latter robbery. The offenses are not only similar, but they are so related in kind that the evidence of armed robbery at a service station, with the same type gun, while dressed in like clothes, at night when the victim was alone clearly serves to illustrate defendant's intent. Robbery of the bus driver occurred at night eight days earlier, with a 45-caliber handgun in the same general neighborhood, while the victim was alone. Prieur wore green trousers on that occasion also.
Assuming that the evidence of the service station robbery was improperly admitted, in my opinion this did not constitute reversible error. This conviction should have been sustained. The taint of the service station robbery was so minor no likelihood existed that Prieur was prejudiced thereby. The other bus robbery shown to have occurred on June 5, 1970 was so similar in all of its aspects to the crime charged that even the majority opinion concedes evidence of that crime was properly admitted. Thus adequate evidence of a similar offense was offered to prove the requisite intent. If evidence of the service station robbery had not been admitted, the evidence of guilt was otherwise so compelling the result would have been the same. La.Code of Crim.Proc. art. 921; 1 Wharton's Criminal Evidence § 240 (13th ed.1972).
As I understand the basis for reversal, it is that the evidence of the service station robbery was dissimilar and, therefore, "in no sense fairly admissible" by the State to show intent. The opinion then proceeds to discuss the evidence of guilt and finds the State's case "weak", a conclusion not supported by the record, and, in any event, a matter within the exclusive province of the jury.
There is an intimation, although not clearly expressed, that the Louisiana Constitution is violated because the evidence authorized to be introduced by Sections 445 and 446 of Title 15 may be prejudicial to persons accused of crime. This contention lacks force. In Spencer v. Texas, 385 *133 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967), the Supreme Court of the United States discussed the matter thus:
"The rules concerning evidence of prior offenses are complex, and vary from jurisdiction to jurisdiction, but they can be summarized broadly. Because such evidence is generally recognized to have potentiality for prejudice, it is usually excluded except when it is particularly probative in showing such things as intent, Nye & Nisson v. United States, 336 U.S. 613, 69 S.Ct. 766, 93 L.Ed. 919, Ellisor v. State, 162 Tex.Cr.R. 117, 282 S.W.2d 393; an element in the crime, Doyle v. State, 59 Tex.Cr.R. 39, 126 S.W. 1131; identity, Chavira v. State, 167 Tex.Cr.R. 197, 319 S.W.2d 115; malice, Moss v. State, Tex.Cr.App., 364 S.W.2d 389; motive, Moses v. State, 168 Tex.Cr.R. 409, 328 S.W.2d 885; a system of criminal activity, Haley v. State, 87 Tex.Cr.R. 519, 223 S.W. 202; or when the defendant has raised the issue of his character, Michelson v. United States, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168; Perkins v. State, 152 Tex.Cr.R. 321, 213 S.W.2d 681; or when the defendant has testified and the State seeks to impeach his credibility, Giacone v. State, 124 Tex. Cr.R. 141, 62 S.W.2d 986."
These statutes have withstood attack against a claim that they violated the federal Bill of Rights. They are, therefore, in accord with our own Bill of Rights patterned from the federal. Crook v. Henderson, 310 F.Supp. 200 (E.D.La.1970); Cardinale v. Henderson, 316 F.Supp. 481 (E. D.La.1970).
Admittedly, in all these situations the jury learns of prior crimes committed by the defendant and is undoubtedly prejudiced to some extent thereby. But the effect of this unavoidable prejudice is understood to be outweighed by the validity of the State's purpose in permitting introduction of the evidence. Rules of evidence on the subject are designed to reconcile the possibility that this type of information will have some prejudicial effect with the admitted usefulness it has as a factor to be considered by the jury for any one of a large number of valid purposes. Crook v. Henderson, supra.
Another indicated basis for the decision is the statement in the opinion that "whoever held up the bus driver, Morris Johnson, knew what he was doing and intended what he was doing", and, therefore, according to the majority opinion, there was no reason for the State in its case in chief to show "knowledge" or "intent."
Six years ago we held that because intent is one of the elements of the crime of armed robbery, evidence is admissible under Sections 445 and 446 of Title 15 to show that intent. State v. Welch, 250 La. 719, 198 So.2d 902 (1967). See also State v. Montegut, 257 La. 665, 243 So.2d 791 (1971); State v. Schoonover, 252 La. 311, 211 So.2d 273 (1968); 29 La.L.Rev. 304 (1969). A year earlier in a felony murder doctrine case involving armed robbery of a bus driver, this Court approved the introduction of evidence of attempted robberies by the accused of several places of business in order to show intent. State v. Evans, 249 La. 861, 192 So.2d 103 (1966).
Notwithstanding that the element of intent may have been obvious to the Court from the mere proof of the facts surrounding the robbery charged, this Court should not limit the prosecution in its legitimate offering of evidence which may dispel the slightest doubt in the minds of any juror. Proof beyond a reasonable doubt is a heavy burden, and the prosecutor should not be unduly hindered in his task. Where jointly charged defendants are involved, the matter of proof is further complicated. All legitimate evidence on the issue must be presented. To do less is to hazard the outcome of a case in which the guilt of the accused is otherwise amply established.
The opinion then proceeds to express the views of the four-member majority, in this four-to-three decision, with respect to the *134 admissibility of evidence of other offenses to prove intent. Then in its exaggerated concern for the defendant, the Court proceeds to set out five vague and indefinite requirements, prerequisites, conditions or procedural obstacles to the admission of such evidence. By doing so, a long line of cases in this Court have been overruled. In none of the cases decided before has it been necessary to comply with these five requirements before evidence of other offenses could be introduced to show intent.
Imposition of these five requirements has the effect of repealing the legislative authorization (La.R.S. 15:445-446) for the introduction of such evidence, for by this Court's decision that authorization is now fettered with five requirements the State must meet before the statute can have effect. Without prior compliance with these requirements the statute is now impotent. This legislative edict of the Court emasculates a statute which has been given effect by this Court since 1928.
Criminal justice is overburdened in our society. The addition of these five innovative requirements can only hamper and further encumber the criminal dockets of our courts. More evidentiary hearings prior to trial, more delays in the actual conduct of the trial and more grounds for technical error will be the inevitable result of this decision. The entire burden which these five requirements impose is upon the State. By these requirements the accused will obtain a pretrial examination of the State's evidence, a result we have often said we would not permit. See State v. Hunter, 250 La. 295, 195 So.2d 273 (1967).
In the short space of time since State v. Hills, 259 La. 436, 250 So.2d 394 (1971), this Court has rendered decisions involving Sections 445 and 446 of Title 15 in the following cases: State v. St. Amand, La., 274 So.2d 179, decided February 19, 1973; State v. Dodson, 260 La. 471, 256 So.2d 594 (1972); State v. Modelist, 260 La. 945, 257 So.2d 669 (1972); State v. Carney, 260 La. 995, 257 So.2d 687 (1972); State v. Dillard, 261 La. 703, 260 So. 2d 675 (1972); State v. Smith, 262 La. 39, 262 So.2d 362 (1972); State v. Gray, 262 La. 53, 262 So.2d 367 (1972); State v. Whitsell, 262 La. 165, 262 So.2d 509 (1972); State v. Crockett, 262 La. 197, 263 So.2d 6 (1972); State v. Clouatre, 262 La. 651, 264 So.2d 595 (1972); State v. Hayes, 262 La. 674, 264 So.2d 603 (1972). By overruling these cases and the long line of decisions preceding State v. Hills, wherein the statutes were applied as written by the Legislature, a great disservice to the jurisprudence of this Court results. In the judicial branch of the government stability is one of the great sources of its strength. The Court's strength suffers from this decision.
I respectfully dissent.
NOTES
[1] Bills of Exceptions Nos. 2, 3-12, and 21 were neither briefed nor argued, and are therefore considered abandoned.
[2] If in the utterly unlikely event the defendant had injected such an issue, then only could the State conceivably have properly contended that such evidence was admissible in rebuttal to show knowledge or intent.